Edna BECKER, Edna Becker, Administratrix of the Estate of Sam Becker, Deceased, Leland Becker, LeRoy Becker, Sammie Becker, and Donald Becker, Plaintiffs In Error,

v.

STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC WELFARE, Mary Weigandt, Lydia Fuchs, Hanna Frick and Caroline Frederick, Defendants In Error.

No. 36092.

Supreme Court of Oklahoma.

April 30, 1957.

Rehearing Denied June 25, 1957.

As Amended July 24, 1957.

938

J. T. Bailey, Cordell, for plaintiffs in error.

Walter H. Foth, Cordell, Wayne W. Bayless, Oklahoma City, for cross-petitioners.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Jess L. Pullen, Oklahoma City, Atty. for the Dept. of Public Welfare, for defendant in error.

PER CURIAM.

The State of Oklahoma ex rel. Department of Public Welfare, filed this action in the District Court of Washita County against Edna Becker, individually and as administratrix of the estate of Sam Becker, deceased, Mary Weigandt, Lydia Fuchs, Hanna Frick, Caroline Frederick and the unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, if any, of George and Pauline Becker, deceased, and Edna Becker, LeRoy Becker, Leland Becker, Sammie Becker, Donald Becker, and the unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, if any, of Sam Becker, deceased, to recover old age assistance payments received by George and Pauline Becker, while living, and alleged to have been fraudulently obtained.

The State also sought to establish a first and paramount lien on a farm to secure the payment of any judgment obtained. Title to the farm stood in the name of Sam Becker.

The following facts explain the reason for this action and the relationship of the numerous defendants named by the State.

George and Pauline Becker were married in 1919. Both of them died in 1948. Each had been married previously. George Becker owned the farm here involved when he and Pauline Becker were married. By his first marriage George Becker had five children. They were Sam Becker, Mary Weigandt, Lydia Fuchs, Hanna Frick and Caroline Frederick. Sam Becker died in 1950 and his four sisters last named will be referred to as cross-petitioners.

Pauline Becker left three children by her first husband. Mrs. Parks Buntley, Barney Schneider, and Leo Schneider, who were not named as defendants but were witnesses in the trial.

When Sam Becker died in 1950 he left his widow, the administratrix of his estate, Edna Becker, and four sons, LeRoy, Leland, Sammie and Donald Becker, who are referred to as answering defendants, and they are plaintiffs in error in this appeal.

The State alleged that in 1945 George and Pauline Becker owned 160 acres of land in Washita County and in March 1945 entered into a conspiracy with Sam Becker, a son of George Becker by a previous marriage, whereby it was agreed that they would and did convey their farm to Sam Becker in order to make themselves eligible for old age assistance by the State, and that to further their scheme it was agreed that Mrs. Parks Buntley (a daughter of Pauline Becker by a former marriage) and her

husband would convey to George and Pauline Becker a home in the City of Clinton for a purported consideration of $3,800 which was supposed to represent the equity of the Beckers in the farm which they conveyed to Sam Becker in 1945.

It was also alleged that no consideration passed for the deed to Sam Becker and none to the Buntleys for the home in Clinton. That immediately after the conveyance by the Buntleys of the home to George and Pauline Becker, George and Pauline Becker executed and delivered to the Buntleys a deed reconveying the home to them, without consideration and that this deed was withheld from the records.

Prior to the conveyance above mentioned George and Pauline Becker had made application for old age assistance and they had been denied on the ground that they were ineligible. However, October 4, 1946, they applied again in Custer County and stated that they had no property or resources except the home in Clinton of a value of $3,800 and that Sam Becker had given them this home as payment for the equity in the farm they had conveyed to Sam Becker and that the farm was under a mortgage of $3,000.

It was alleged that the above statements were false and made for the purpose of deceiving and defrauding the State Welfare Board and to induce the granting of old age assistance. That George Becker was paid $987 and Pauline Becker $1,062 or a total of $2,049 when this action was filed praying for judgment for the above sum against the estate of George and Pauline Becker and their heirs and that under Section 171, 56 O.S.1951, said judgment be declared a first and paramount lien against the farm conveyed to Sam Becker and that the land be sold to satisfy the judgment prayed for.

Edna Becker, individually and as administratrix of the estate of Sam Becker, deceased, and their children filed an answer in the form of a general denial. After the filing of a cross-petition by the sisters of Sam Becker, deceased, they filed an answer thereto alleging that the deed from George and Pauline Becker to Sam Becker was valid and prayed that cross-petitioners be denied any relief.

The cross-petition of Mary Weigandt and her sisters, children of George Becker by a former marriage, alleged that they knew nothing of the conveyance to Sam Becker of the farm by their father, George Becker, until two years after the deed was executed and did not know that their father and stepmother were drawing old age assistance until the summer of 1947. They alleged that no consideration passed from Sam Becker to George and Pauline Becker for the conveyance of the farm and that no consideration passed to the Buntleys for the home they conveyed to the Beckers in Clinton and that these transactions were for the purpose of securing old age assistance and constituted a fraud upon the State.

They prayed that the deed of their father, conveying the farm to Sam Becker, be set aside and vacated and that they be declared the owners of the farm in equal shares with the heirs of their brother, Sam Becker. They further prayed in the alternative that it be adjudged that the conveyance of the farm to Sam Becker be declared made to create a trust for their benefit and that they should each be adjudged to have an undivided one-fifth interest therein subject to the prior lien of the State, or that each be given judgment for $1,000 and a lien against the farm.

The court submitted to the jury the action by the State against the defendants and considered the action pled by cross-petitioners as an action in equity to be determined by the court.

The jury found for the State for the sum prayed for and entered a personal judgment for that amount against Edna Becker, administratrix of Sam Becker, deceased, and against the four children of Sam Becker, deceased, and Edna Becker, and against the unknown heirs, executors, administrators, devisees, trustees and assigns of George and Pauline Becker and Sam Becker, deceased, and that the farm be impressed with a lien to satisfy this

judgment, directing the sale of the land and the application of the proceeds to the payment of costs, taxes against the land, the judgment in favor of the State, and that the residue be paid into court to await further orders of the court.

On issues raised by cross-petitioners, the court found that George Becker was the owner of the farm involved and on March 27, 1945, joined by his wife, conveyed the farm to his son, Sam Becker with the intention and provision that Sam Becker should pay his four sisters above named $1,000 each as their interest in the farm, and the estate of George Becker, deceased. Cross-petitioners named were adjudged to have a constructive trust established in the land and each entitled to a lien for the amount to which each was entitled, subject to the first lien of the State.

The answering defendants appealed from the judgment against them in favor of the State and from the judgment against them in favor of cross-petitioning defendants who filed a cross-appeal.

■ The Plaintiffs in error, being heirs and the legal representatives of Sam Becker, deceased, first complained that the district court did not have jurisdiction of the subject matter of this action. This contention is based upon the fact that no executor or administrator had been appointed for either George Becker or his wife and that no claim had been presented to a representative of either before the State instituted this action in the district court.

Our attention is called to Section 13, Article 7 of our State Constitution which gives the county court exclusive original jurisdiction in probate matters, including the payments of claims against an estate. Section 341 of the Probate Court Code, which is 58 O.S.1951, provides that no action may be maintained by the holder of a claim against the estate unless the claim is first presented to the executor or administrator. Section 339 of the same Code provides that if a claim is rejected the holder must bring an action against the

representative of the estate in order to establish it as an obligation of the estate.

■ In Clover v. Neely, 116 Okl. 155, 243 P. 758, the court announced in the fifth paragraph of the syllabus as follows:

"A claim arising on contract must be presented to the administrator for allowance or rejection before suit can be maintained thereon, but not so where the claim arises in tort or other wrongful act of the deceased."

The same rule is announced in United States Fidelity & Guaranty Co. v. Krow, 184 Okl. 444, 87 P.2d 950, 951 in the second paragraph of the syllabus as follows:

"A claim arising on contract must be presented to the administrator for allowance or rejection before suit can be maintained thereon, but not so where the claim arises in tort or other wrongful act of the deceased. American Trust Co. v. Chitty, 36 Okl. 479, 129 P. 51."

■ We conclude that since the action of the State was based upon fraud, it was not necessary that its claim be presented to the legal representative of the estate of George and Pauline Becker, deceased, before suit could be properly filed thereon. Section 171, 56 O.S.1951, provides in part as follows:

" * * * Any assistance which the recipient shall have received, by reason of such misrepresentation or concealment of facts, in excess of the amount to which he is entitled, * * * shall be recoverable as a debt due to the State and shall be paid into the State Treasury to the credit of the State Assistance Fund. The State shall have a first and paramount lien upon all the assets and effects of said recipient to secure such repayment."

In brief, where old age assistance is received as a result of misrepresentation or concealment, it " * * * shall be recoverable as a debt due to the State" and that " * * * The State shall have a first and paramount lien upon all the assets and

effects of said recipient to secure such re-payment." In Brashears v. State ex rel. Oklahoma Public Welfare Commission, 194 Okl. 663, 154 P.2d 101, it was held that such lien does not abate at the death of the wrongful recipient. Since the claim of the State is based upon fraud, we conclude that the district court had jurisdiction.

■ The second error complained of is that the court erred in admitting incompetent and prejudicial evidence. It is also argued that the claims of the State and cross-petitioners are wholly unrelated. It should be remembered that each was endeavoring to establish a lien against the same land. Their claims were of a different nature but they both related to the same subject matter. We see no reason why the claim of these parties should not be litigated in the same action.

As to the testimony admitted by deposition we find these facts. The attorneys for cross-petitioners gave notice of taking depositions in Colorado. The attorney giving the notice for some reason failed to appear. The attorney for the State appeared and proceeded to examine the witnesses.

■ When these depositions were offered in evidence, the attorney for the representatives of Sam Becker, deceased, objected and now claims that questions propounded constituted cross-examination and cite authorities to the effect that cross-examination is improper in the absence of direct examination. The objections covered the entire depositions and under Sections 450 and 452, 12 O.S.1951, such an objection to a deposition should have been made before the commencement of the trial. No exceptions were filed and only objections were made at the time the questions and answers were offered.

■ The complaining party objected to the introduction of certain exhibits by the Department of Public Welfare which contained the various applications of George Becker and wife for old age assistance.

They were competent evidence in support of the issues involved.

■ One of the attorneys for the State testified with respect to the information received by the State which resulted in this action to recover the old age assistance paid out to the elder Beckers. Such testimony as was admitted over the objections of answering defendants was not such as to justify a reversal, when we consider the competent evidence offered in support of the principal issues made by the pleadings.

■ The evidence offered is sufficient to establish fraud, and that no consideration passed from Sam Becker to George Becker and wife when they conveyed the farm to him. Sam Becker paid the mortgage against the land of approximately $3,000, and paid the taxes thereon while he occupied it. He received all rentals arising from the farm while he was in possession. No consideration passed to the Buntleys who conveyed a residence in Clinton to George Becker and wife, who immediately reconveyed the house to the Buntleys by deed which was not recorded. The proof of fraud in obtaining old age assistance is clear, cogent and convincing.

■ Was it error to declare the judgment of the State a lien on the farm? The evidence is clear that George Becker and wife abandoned the farm as their homestead when they deeded it to Sam Becker and accepted a deed to a new house in Clinton and occupied it. These things were done to make them eligible for old age assistance. They could not claim the farm as a homestead to avoid a lien thereon under the provisions of Section 171, 56 O.S.1951, heretofore set out.

When the court found that old age assistance payments had been obtained by fraud, and the amount of such payments, the State is clearly entitled to a paramount lien on all of the assets of recipients to secure the repayment of the sums wrongfully obtained.

It is contended that the cross-petition of the four sisters of Sam Becker, deceased, is not germane to plaintiffs' action. As previously stated, George Becker, deceased, owned the farm in controversy when he married Pauline Becker in 1919 and had five living children by a previous marriage. If the conveyance of the farm involved to Sam Becker was invalid then George Becker's heirs would inherit the farm from him upon his death, subject to the prior lien of the State.

The four sisters of Sam Becker, above named, were made parties defendant by the State. They answered and filed a cross-petition whereby they did not dispute the claim of the State but prayed that they be adjudged owners of an interest in the land, or in the alternative, that it be adjudged that Sam Becker took the land in trust and was obligated to pay them the sum of $1,000 each, and that the sums so due them be adjudged a lien on the land, subject only to the prior lien of the State. We think the cross-petition set up a cause of action that was germane to the cause of action of the plaintiff. The court declared a trust for the payment of $1,000 each to the sisters of Sam Becker and declared the land held by his heirs and executrix to be held in trust to secure such payments.

The parties here, other than the State, had the same purpose. Each sought to subject the land to satisfy his or her claim thereto or interest therein.

It is also claimed that the cross-petition does not state a cause of action and that it does not allege facts creating a trust or justifying a cancellation of a deed from George Becker and wife to Sam Becker, but does allege facts that bar them from any equitable relief. The doctrine of "clean hands" is urged.

■ The general rule is that where a party has participated in a fraud, equity will give such party no relief. However, there are exceptions to that rule. The evidence here shows that cross-petitioners had no part in or knowledge of the fraudu-lent actions resulting in wrongfully securing old age assistance for their father, George Becker and his wife. They appear to have learned of it more than a year after the land was deeded to Sam Becker. The heirs of Sam Becker failed to plead the statutes of limitation and thereby waived such claim. For the above reasons we think the cross-petition stated a cause of action.

■ The general rule above mentioned has been generally held not to apply to the deceased heirs who have not participated in the fraud and who could make out their case without disclosing the fraud. See 24 Am.Jur., Fraudulent Conveyances, Section 121, cited in Hickey v. Ross, 197 Okl. 543, 172 P.2d 771, Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143, and Wantulok v. Wantulok, 67 Wyo. 22, 214 P.2d 447, 223 P.2d 1030, 21 A.L.R.2d 572.

■ Answering defendants also claim that the court erred in failing to sustain their demurrer to the cross-petition, alleging that the conveyance of the farm to Sam Becker was without consideration and in pursuance of a scheme and conspiracy between George and Pauline Becker and Sam Becker, and the Buntleys as alleged in plaintiffs' petition.

After careful consideration of the evidence, we are convinced that the evidence is sufficient to warrant the conclusion that Sam Becker obtained title to the land under circumstances that would make it inequitable for him or his heirs to retain full title thereto to the exclusion of his four sisters, the cross-petitioners herein.

Cross-petitioners are not barred by limitations because limitations only begin where a trustee repudiates his trust and such fact is brought to the knowledge of the cestuis que trustent. They had no notice that he had repudiated the trust.

The evidence of the intention of George Becker as to the manner and amount that Sam Becker was to pay his four sisters is not entirely clear. However, there is evidence that at one time George Becker

stated that Sam Becker would take care of his four sisters and give them an equal share in the farm. We think it would be more equitable to allow Sam Becker's children to share with Sam Becker's sisters in the farm, rather than to allow his sisters only $1,000 each, in lieu of their interest in the land.

The judgment for the State is affirmed but that portion of the judgment that Sam Becker's heirs shall have the land after payment of judgment in favor of the State and pay to each of Sam Becker's four sisters the sum of $1,000 is reversed with directions to enter judgment that the farm shall go to the heirs of George Becker, deceased, subject to the prior lien of the State. Should a sale of the farm be necessary, after payment of costs and the judgment in favor of the State, the proceeds shall go to the heirs of George Becker.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON, and JACKSON, JJ., concur.

HALLEY and WILLIAMS, JJ., concur in part and dissent in part.

BLACKBIRD, J., dissents.

HALLEY, Justice.

I concur with the majority opinion in so far as it holds that administrator did not have to be appointed in this case, but I think the judgment of the trial court should have been affirmed in toto. Clearly the deed given to Sam Becker by his father, George Becker, was given to defraud a subsequent creditor, the State of Oklahoma, and is clearly fraudulent as to the State. 37 C.J.S. Fraudulent Conveyances § 186b; May v. Gibler, 319 Mo. 672, 4 S.W.2d 769. However, I am of the opinion that this deed to Sam Becker from his father was a good and valid conveyance between the two, and was only fraudulent as to the State of Oklahoma. I think the correct rule is found in 37 C.J.S. Fraudulent Conveyances § 263, which says:

"An absolute conveyance or transfer of property, although made to defraud creditors, conveys the legal and equitable titles to the grantee against all except defrauded creditors."

It is my view that the majority opinion is incorrect in giving a one-fifth each to the four sisters. I think they should have received the one-thousand dollars each. To this extent I dissent to the majority opinion.